OCEAN SPRAY, The (ERLANDSEN v.). See Case No. 4,518.

OCEAN STAR, The (O'CONNOR v.). See Case No. 10,419.

OCEAN STAR, The (ROBERTS v.). See Case No. 11,908.

OCEAN STEAM-NAV. CO. (ENGLISH v.). See Cases Nos. 4,490 and 4,490a.

═══════════

## Case No. 10,413.

OCEAN STEAM-NAV. CO. v. The REVENUE.

District Court, S. D. New York. Dec. 20, 1854.

### SALVAGE SERVICE—COMPENSATION.

[A ship, valued, with her cargo, at $85,000, which had lost her masts and rudder, and was being navigated under jury masts and an extemporized rudder, was towed into port, during a hard blow in squalls, by a transatlantic liner, valued at $300,000, with a cargo valued at $500,000, which lost a day's time, parted two hawsers, and was slightly damaged in collision. Held, that it was a salvage service, and $6,000 was a reasonable allowance.

The libel was filed in this case to recover a salvage compensation for services rendered to the ship Revenue by the steamship Washington, owned by the libelants. The ship Revenue, of 546 tons burden, valued, with her cargo, at $85,000, sailed from Hampton Roads on the 5th of September, 1853, bound to Australia. When about five days out she encountered a severe gale, which threw the ship on her beam ends, and to right her the crew were compelled to cut away her main and mizzenmast. She also lost her foretopmast and jibboom, and her rudder, during the gale, which lasted about six hours. After the gale the crew proceeded to get up jury masts and a temporary rudder, which occupied about five days, and the ship then bore away for New-York to be repaired. On the morning of

the 28th they had made some 400 miles, and were then about 90 miles from Sandy Hook. The captain had been sick for several days before. About 9 in the morning of the 28th, they were hailed by the pilot boat David Mitchell, and an agreement was made that the pilot boat should tow the ship. She accordingly took hold and towed her until about 5 in the afternoon, when the steamship Washington, then bound from Bremen to New-York, offered her assistance to the ship, which was accepted. She took hold of the ship about 6 p. m., and the pilot boat then let go. The wind that night blew from the north and the northwest, blowing heavily in squalls. The Washington towed the ship till about 9 p. m., when the hawser parted, and the ship, having by this time been towed to anchorage ground, came to anchor. The weather was boisterous through the night, so that the Washington could not take hold of her again that night, but she remained by her, and in the morning took hold of her again with another hawser, and brought her late in the afternoon to the city of New-York, having parted the second hawser also in so doing. The Washington was worth $300,000. She was insured for $200,000, and had on board a cargo valued at $500,000, with over 200 passengers, and a ship's company of 104. She was delayed about a day, for which her running expenses are about $800. She was injured by a collision with the ship, while taking her in tow, to the amount of about $200, and it cost between $700 and $800 to replace the two hawsers. The owners of the Washington having filed their libel to recover salvage, the owners of the pilot boat also came in, claiming salvage, and were made colibelants.

Martin, Strong & Smith, for libelants.

Benedict, Scoville & Benedict and Mr. De Forest, for claimants.

Mr. Hamilton, for the pilots.

HELD BY THE COURT (INGERSOLL, District Judge): That the service rendered by the Washington was a meritorious one, and must be paid for as salvage service; that the Revenue was in a crippled and disabled condition, and would probably have been blown off to sea by the northerly and westerly winds, if it had not been for the assistance of the Washington, which rescued her from imminent peril. That the Washington jeopardized her insurance by her deviation, and, if her valuable cargo had been lost by the means, the owners would have been liable as common carriers for it; and that she was exposed to some peril herself by her delay. That six thousand dollars is a reasonable compensation for the services she rendered. The pilots' claim having been settled before the trial, their libel was dismissed.

Decree for the libelants, therefore, for $6,000, in which sum is included the actual loss and damage sustained by the Washington.